FILED by SL D.C.

Nov 1, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20729-CR-UNGARO/O'SULLIVAN

18 U.S.C. § 371

UNITED STATES OF AMERICA

vs.

MICHAEL JASON BOESENBERG,
   a/k/a "Tattoo,"

   Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Information:

**The Convention on International Trade in Endangered
Species of Wild Fauna and Flora**

1.   The United States was a signatory to an international treaty known as the "Convention on International Trade in Endangered Species of Wild Fauna and Flora," 27 U.S.T. 1087, T.I.A.S. 8249 (hereinafter "CITES"). CITES provides a mechanism for regulating international commercial trade in species of wildlife whose continued survival is threatened by such trade. The various wildlife species that have attained protected status under CITES are listed by species name and placed within three "appendices" to CITES which correlate to the level of protection deemed necessary to protect the species.

2.   Appendix II of CITES lists certain wildlife species which, although not necessarily threatened with extinction, may become so without strict regulations and limitations placed upon trading in specimens of such species. CITES, Art. II, § 2(a). Although commercial trade in

Appendix II species is permissible, it is strictly regulated and subject to stringent requirements, including the requirement of the issuance of an export permit for such species from the exporting country. CITES, Art. IV, § 2, 5.

### The Endangered Species Act and Related Regulations

3.  CITES is implemented in the United States by the Endangered Species Act of 1973 (16 U.S.C. §§ 1531-1544) (hereinafter "ESA"). *See* 16 U.S.C. § 1537(a). The ESA states that it is "unlawful for any person . . . to engage in any trade in any specimens [of wildlife] contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES]" or attempt to do so. *See* 16 U.S.C. § 1538(c)(1), 1538(g). The term "trade" is further defined in Article 1(c) of CITES to include, among other activities, to "export."

4.  The requirements of CITES are further implemented in the United States through federal regulations which enforce CITES permitting requirements and require a CITES export permit or re-export certificate to be issued by the United States prior to the exportation of any CITES-protected wildlife from the United States. *See* 50 C.F.R. §§ 23.13, 23.20(e), 23.23, 23.92. Moreover, these same regulations provide that exporting or engaging in international trade, including exportation, of any species listed in Appendix II of CITES without adherence to CITES permitting requirements is unlawful. *See* 50 C.F.R. §§ 23.13(a), 23.13(f).

5.  In addition to enforcing the requirements of CITES, regulations enacted under the ESA also required that an exporter of wildlife complete a "Declaration for Importation or Exportation of Fish or Wildlife" (USFWS Form 3-177) and submit it to the United States Fish and Wildlife Service (USFWS) prior to the exportation of wildlife. This official form requires that each item of wildlife be listed along with their respective species names, their CITES permit

numbers (for CITES-protected species), the quantity of each species, and the monetary values of each species. *See* 50 C.F.R. §§ 14.52, 14.61, 14.63.

6. Section 1538(e) of the ESA (16 U.S.C. § 1538(e)) made it "unlawful for any person . . . exporting . . . wildlife . . . to fail to file any declaration or report as the Secretary [of the Department of the Interior] deems necessary to facilitate enforcement of this chapter [of the ESA] . . . ." Such necessary declarations or reports include the required individual declarations set forth upon USFWS Form 3-177 identifying each species of wildlife intended for export and additionally specifying whether the wildlife had been taken from the wild.

### The Lacey Act

7. The Lacey Act, 16 U.S.C. §§ 3371-3378, made it "unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any . . . wildlife . . . which has been, or is intended to be – (1) . . . exported, transported, sold, [or] purchased . . . or (2) transported in interstate or foreign commerce." *See* 16 U.S.C. § 3372(d)(1)&(2).

8. In addition, the Lacey Act made it "unlawful for any person – (2) to . . . export, transport, sell, receive, acquire or purchase in interstate or foreign commerce – (A) any . . . wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State . . . .", or attempt to do so. *See* 16 U.S.C. §§ 3372(a)(2)(A) & 3372(a)(4).

### Florida Regulations Regarding Turtles

9. In the State of Florida, turtles in the wild are protected in accordance with Florida Administrative Code 68A-25.002(6)(c), which states . . . "No person shall buy, sell, or possess for sale turtles, their eggs or parts thereof, that have been taken from the wild." In addition, Florida Administrative Code 68A-25.002(6)(a)2.f. states . . . "No person shall possess more than two . . .

diamond-backed terrapins (*Malaclemys terrapin*), [or] two box turtles (*Terrapene Carolina*)," both of which species of turtles are also protected under Appendix II of CITES.

### The Defendant

10.     Defendant **MICHAEL JASON BOESENBERG** was a resident of Fort Myers, Florida and was the holder of a U.S. Fish and Wildlife Service Import/Export License which was effective as of April 26, 2018 and expired on March 31, 2019. This license authorized **BOESENBERG** to "import/export wildlife and/or wildlife products" at ". . . any designated port" which, in the State of Florida, included only port facilities located in Miami, Florida. *See* 50 C.F.R. § 14.12.

### The Co-Conspirators

11.     Co-conspirator Nai Chun Vincent Cheung, a/k/a Vincent Cheung (hereinafter "Vincent Cheung" or "Cheung") was a resident of Hong Kong who was engaged in the business of commercial shipment of wildlife exported from the United States and elsewhere to Hong Kong through his Hong Kong-based business identified on pertinent export and shipping documents as "Reptiles Paradise, M/F 140 Tung Choi Street, Mong Kong, Kowloon, Hong Kong."

12.     Co-conspirator Michael Allen Pata was a resident of Eustice, Florida who was engaged in the business of both the commercial purchase, acquisition and collection of wildlife from within the United States, and the subsequent exportation of wildlife from the United States through Pata's business which was identified as "Reptile Paradise."

13.     Reptile Paradise was a business name related to Reptile Paradise, LLC, a Florida corporation operated by Michael Allen Pata and identified on pertinent export and shipping documents as "Reptile Paradise 3200 Lake Johanna Drive, Eustis, Florida."

## CONSPIRACY
### (18 U.S.C. §371)

Beginning at least as early as in or around June 1, 2017, to in or around August 8, 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MICHAEL JASON BOESENBERG,**
a/k/a "Tattoo,"

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Vincent Cheung, Michael Allen Pata, and others known and unknown to the United States Attorney:

    a.    to fraudulently and knowingly export and send from the United States, merchandise, articles, and objects consisting of certain species of wildlife, contrary to any law and regulation of the United States, namely, the Endangered Species Act, 16 U.S.C. § 1538(c)(1) & (e) and 50 C.F.R. § 23.13(a), and the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(A), in violation of 18 U.S.C. § 554(a);

    b.    to knowingly export wildlife known to have been taken, possessed, transported and sold in violation of the laws and regulations of the State of Florida, namely, Florida Administrative Code Section 68A-25.002(6)(c) and 68A-25.002(6)(a)2.f., in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(A); and

    c.    to knowingly make and submit, and cause to be made and submitted, false records and labels for, and false identification of, certain species of wildlife that had been or were intended to be exported and transported in foreign commerce, in violation of 16 U.S.C. §§ 3372(d) and 3373(d)(3)(A), in violation of 18 U.S.C. § 371.

### THE PURPOSE OF THE CONSPIRACY

14.    It was a purpose of the conspiracy for the defendant and his co-conspirators to

unjustly enrich themselves and others by operating a joint undertaking in the unlawful collection, possession, sale, purchase, transportation, shipment, and exportation of wildlife, consisting primarily of certain species of turtles taken from their natural habitat in the State of Florida, which turtles were protected by laws and regulations of the State of Florida and the United States.

## MANNER AND MEANS

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

15. Vincent Cheung and Michael Allen Pata would communicate by means of email and wireless voice and text message communications, as well as through "WeChat," a cellphone application that could transmit both text messages and voice communications as an instrumentality of foreign commerce over the internet.

16. Through these devices, Vincent Cheung would supply Michael Allen Pata with listings of various species of turtles and the estimated quantity of each such species which Cheung desired Pata to purchase and acquire in the State of Florida and thereafter export to Cheung's business in Hong Kong from Miami International Airport ("MIA") in the Southern District of Florida. The species of wildlife which Cheung sought to obtain included certain CITES-protected species of turtles, such as Florida Box Turtles (*Terrapene Carolina Bauri*), Spotted Turtles (*Clemmys Guttata*), and Diamond Back Terrapins (*Terrapene Carolina*), as well as other species of turtles not protected under CITES, but protected under Florida law if taken from their natural habitat, including the Eastern Mud Turtle (*Kinosternon Subrubrum*) and the Striped Mud Turtle (*Kinosternon baurii*).

17. Michael Allen Pata and Vincent Cheung would acquire the turtles sought by Cheung from **MICHAEL JASON BOESENBERG**, who would deliver the requested turtles to

Pata with the understanding that: (a) the turtles would be exported from Florida to Cheung in Hong Kong, and that (b) the payment to **BOESENBERG** for the purchase of the turtles would be supplied to **BOESENBERG** by Cheung, through Pata, who would deliver the necessary funds to **BOESENBERG**.

18.  **MICHAEL JASON BOESENBERG** would acquire the turtles which Michael Allen Pata and Vincent Cheung had requested by enlisting the assistance of at least one additional co-conspirator who, along with **BOESENBERG**, would surreptitiously hunt, capture and take the turtles, including both CITES-protected turtles and turtles protected by Florida law, from their natural Florida habitat.

19.  At his residence in Fort Myers, Florida, **MICHAEL JASON BOESENBERG** would arrange to meet with Michael Allen Pata and deliver these same wild-caught turtles to Pata with knowledge that the turtles would be exported from MIA to Cheung and his business in Hong Kong.

20.  Prior to export, Michael Allen Pata would pack the wild-caught CITES-protected turtles obtained from **MICHAEL JASON BOESENBERG** in such a manner as to be interspersed or layered within shipping cartons that contained a significantly greater number of smaller-sized Florida-protected turtles, also obtained from **BOESENBERG**, in order to insure that USFWS inspectors or U.S. Customs personnel did not detect the presence of the unpermitted and undeclared CITES-protected turtles concealed in these exports.

21.  Michael Allen Pata, through Reptile Paradise, which was identified on shipping and export documents as the shipments' "exporter," would deliver, and cause to be delivered, each of the shipments containing undeclared, unpermitted CITES-protected turtles and wild-caught Florida-protected turtles supplied by **MICHAEL JASON BOESENBERG** to customs brokers

and ultimately an air carrier at MIA for placement upon aircraft which would transport, in foreign commerce, each of the wildlife shipments to Vincent Cheung and his Hong Kong business, Reptiles Paradise.

22.     Michael Allen Pata and Vincent Cheung, would cause materially false information to be supplied to USFWS in order to obtain export clearance for the unlawful wildlife shipments, including false statements upon USFWS Forms 3-177, as well as required invoice submissions, that failed to declare and itemize the presence of unpermitted CITES-protected wildlife concealed within the shipments. These same USFWS Forms 3-177 would also falsely declare that the wild-caught non-CITES-protected turtles contained within the shipments, which turtles were prohibited by Florida law from being sold if taken in the wild, were not wild-caught, but had been bred in captivity.

23.     Michael Allen Pata would, shortly before or after each unlawful wildlife export, send emails or WeChat texts to Vincent Cheung attaching a parallel invoice strictly for internal use between Cheung and Pata. These same parallel invoices would reference the same invoice number as had been set forth upon the required original invoice supplied to USFWS, but would now include an itemization of the concealed CITES-protected turtles portion of the shipment which had not been declared to USFWS or set forth on the original invoice.

24.     Vincent Cheung would wire transfer funds to Michael Allen Pata, which funds would be used to pay **MICHAEL JASON BOESENBERG** for turtles supplied by **BOESENBERG**, or to reimburse Pata for payments made on Cheung's behalf to **BOESENBERG** for turtles which **BOESENBERG** had previously supplied, as well as funds sufficient to pay Pata a "commission" for his efforts.

25.     With funds wire transferred to Michael Allen Pata by Vincent Cheung, Pata would

make cash withdrawals or wire transfers from the bank account into which Cheung's wired funds had been received and provide the necessary payments to **MICHAEL JASON BOESENBERG** by means of either cash supplied directly to **BOESENBERG** upon the delivery of turtles to Pata or, in certain instances, by means of money transfer service remittances between Pata and **BOESENBERG**.

26. Vincent Cheung and Michael Allen Pata would make use of coded language in place of common species names when referring to particular CITES-protected wildlife while communicating, using such terms as "ear infection(s)" in place of Florida Box Turtle (*Terrapene Carolina Bauri*), "small high color cooter(s)" in place of Spotted Turtle (*Clemmys Guttata*), and "purple color" in place of Diamond Back Terrapin (*Malaclemys Terrapin*).

27. **MICHAEL JASON BOESENBERG** and Michael Allen Pata would also make use of coded language in place of common species names when referring to certain CITES-protected turtles while communicating and, in so doing, would use terms such as "stars" in place of Florida Box Turtle (*Terrapene Carolina Bauri*), "eastern stars" in place of Eastern Box Turtles (*terrapene carolina carolina*), "saltys" or "snappers" in place of Diamond Back Terrapins (*Malaclemys Terrapin*), and "pressure washing" or "cage building" to refer to **BOESENBERG's** process of collecting and taking turtles from the wild.

### OVERT ACTS

In furtherance of the conspiracy, and in order to achieve its unlawful objectives, at least one of the co-conspirators committed or caused to be committed, at least one of the following overt acts, among others, within the Southern District of Florida, and elsewhere:

1-11. On or about the dates set forth below, Michael Allen Pata caused certain wild-caught protected turtles, which he had purchased and obtained on Vincent Cheung's behalf from

9

**MICHAEL JASON BOESENBERG**, to be delivered to an air carrier at Miami International Airport for export and transport, in foreign commerce, from the United States to Cheung in Hong Kong.

| OVERT ACT | DATE |
|---|---|
| 1 | August 23, 2018 |
| 2 | November 30, 2018 |
| 3 | January 10, 2019 |
| 4 | February 14, 2019 |
| 5 | March 21, 2019 |
| 6 | April 18, 2019 |
| 7 | May 23, 2019 |
| 8 | June 6, 2019 |
| 9 | June 20, 2019 |
| 10 | July 4, 2019 |
| 11 | July 25, 2019 |

12-22. On or about the dates set forth below, Michael Allen Pata supplied an invoice to Vincent Cheung itemizing amounts due from Cheung on account of payment made, or to be made, by Pata to **MICHAEL JASON BOESENBERG** for turtles eventually supplied to Cheung by means of export in foreign commerce from Miami International Airport and the United States to Cheung in Hong Kong.

| OVERT ACT | DATE |
|---|---|
| 12 | August 24, 2018 |
| 13 | December 1, 2018 |

| OVERT ACT | DATE |
|---|---|
| 14 | January 11, 2019 |
| 15 | February 15, 2019 |
| 16 | March 22, 2019 |
| 17 | April 19, 2019 |
| 18 | May 24, 2019 |
| 19 | June 7, 2019 |
| 20 | June 21, 2019 |
| 21 | July 5, 2019 |
| 22 | July 26, 2019 |

23-33. On or about the dates set forth below, **MICHAEL JASON BOESENBERG** supplied protected turtles to Michael Allen Pata for the purpose of supplying the turtles to Vincent Cheung by means of export in foreign commerce from Miami International Airport and the United States to Cheung in Hong Kong.

| OVERT ACT | DATE |
|---|---|
| 23 | August 1, 2018 |
| 24 | November 27, 2018 |
| 25 | December 20, 2018 |
| 26 | February 11, 2019 |
| 27 | March 14, 2019 |
| 28 | April 6, 2019 |
| 29 | May 10, 2019 |
| 30 | June 3, 2019 |

| OVERT ACT | DATE |
|---|---|
| 31 | June 13, 2019 |
| 32 | June 21, 2019 |
| 33 | July 12, 2019 |

All in violation of Title 18, United States Code, Section 371.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


PETER B. OUTERBRIDGE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

MICHAEL JASON BOESENBERG, a/k/a "Tattoo,"

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)
✓ Miami    ___ Key West
___ FTL    ___ WPB    ___ FTP

New defendant(s)           Yes ___   No ___
Number of new defendants   ___
Total number of counts     ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect   _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                        (Check only one)

   I    0 to 5 days         ✓              Petty      ___
   II   6 to 10 days        ___            Minor      ___
   III  11 to 20 days       ___            Misdem.    ___
   IV   21 to 60 days       ___            Felony     ✓
   V    61 days and over    ___

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers:            19-CR-20538-KMW (U.S. v. Cheung, et al)
   Defendant(s) in federal custody as of     _____
   Defendant(s) in state custody as of       _____
   Rule 20 from the District of              _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___   No ✓

_____
PETER B. OUTERBRIDGE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 289914

*Penalty Sheet(s) attached                                              REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: MICHAEL JASON BOESENBERG, a/k/a "Tattoo,"

**Case No**: _____

Count 1:

Conspiracy

Title 18, United States Code, Section 371

\* **Max. Penalty**: Five (5) years' imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| MICHAEL JASON BOESENBERG, a/k/a "Tattoo," | ) ) ) | |
| *Defendant.* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*